**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JOHN H. MCCORMICK, III,**

    **Plaintiff,**

v.                                                       **Case No.  8:05-cv-199-T-30TGW**

**AMO PLANS, a/k/a AMO PENSION**
**PLANS, a/k/a AMERICAN MARITIME**
**OFFICERS PENSION PLAN,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant AMO Plans' Motion for Summary Judgment With Incorporated Memorandum of Law (Dkt. 28), Plaintiff's Memorandum in Opposition to Summary Judgment (Dkt. 29) and Defendant's Reply to said Memorandum in Opposition (Dkt. 32).  Upon review and consideration, this Court finds that Defendant's Motion should be **GRANTED**.

### I. FACTUAL BACKGROUND

Defendant is a multi-employer benefit plan that provides pension benefits to members of the American Maritime Officers (hereinafter "AMO").[1] Plaintiff is a member of AMO and

---

[1] AMO is a maritime labor union that primarily represents licensed officers in the United States Flag Merchant Marines.

works for a contributing employer, Maritrans, Inc. Upon Plaintiff's retirement, he will be entitled to benefits under the AMO Plan (hereinafter "the Plan").

Plaintiff began his employment with Maritrans, Inc in 1979. Between 1979 and 1998, Maritrans had a collective bargaining agreement (hereinafter "CBA") with AMO that covered only Assistant Engineers. In 1982, the CBA's coverage extended to Chief Engineers on Maritran's tugboats. At no time during this period was Plaintiff employed as either a Chief Engineer or an Assistant Engineer.

In addition to the CBA with AMO, Maritrans also had a contract with the Seafarers International Union (hereinafter "SIU"). This contract, until around 1982, covered Barge Captains, Cargo Mates, Tankermen and Utility Men, positions all held by Plaintiff during his employment with Maritrans. In 1982, Martirans determined the positions of Barge Captain and Cargo Mate were supervisory in nature and removed them from coverage under the contract with SIU.

From 1979 to 1989, Plaintiff worked primarily in positions covered under the SUI contract and contributions were made by Maritrans on Plaintiff's behalf to the SIU pension plan. From 1990 to 1998, however, Plaintiff worked primarily as a Barge Captain and Cargo Mate, which during that time were non-union positions. For those years, contributions were made by Maritrans on Plaintiff's behalf to Maritrans' pension plan.[2]

---

[2]Plaintiff, upon his retirement, will be eligible for pension benefits from the Maritiran's pension plan, the SIU pension plan as well as the AMO plan.

In 1998, Maritrans signed an agreement with AMO covering a bargaining unit that included Captains, Chief Engineers, Mates and Barge Supervisors employed on its tugboats. Pursuant to the agreement, Maritrans agreed to make contributions to the pension plan (hereinafter "The Plan") for bargaining unit employees beginning January 1, 1999. The 1998 agreement also provided that the Plan would apply provisions of the Plan's Rules and Regulations relating to past service credit. According to the Rules and Regulations, one year after Maritrans became a contributing employer, Plaintiff would become eligible for past service credit for all of his pre-1999 Maritrans employment in jobs that were in the AMO/Maritrans bargaining unit. In October 1998, Plaintiff contacted the Plan inquiring as to the number of years credit he would receive for past service under the new Plan.

In determining a members' eligibility for past service credits, the Plan requests that a Letter of Service be submitted by the member's employer. Maritran's provided the Letter of Service on July 25, 2001.[3] The letter indicated that from 1979 to 1999, Plaintiff was employed in various positions such as Tankerman, First Tankerman, Utility, AB Tankerman, Barge Captain and Cargo Mate. The letter also stated Plaintiff worked in Barge Captain capacities beginning May 30, 1979 and his position changed on April 2, 1996 to Cargo Mate. However, these letters, according to Defendant, failed to explain why Plaintiff held non

---

[3] On March 27, 2002, Maritrans submitted a second letter in which it stated that Plaintiff started as a Barge Captain in October 1979 (instead of May 1979 as stated in the 2001 letter), and changed to Cargo Mate in December 2001. The letter also acknowledged that while Plaintiff sailed in other capacities, he remained in a supervisory status from October 1979 and continues (at the time of the letter) to hold a supervisory position as Cargo Mate.

supervisory titles if he was still a supervisor, why Plaintiff was a member of the SIU or received SIU benefits[4], or whether he functioned as an officer while holding those titles. Based on the Letter of Service, the Trustees determined only Plaintiff's service as a Barge Captain and Cargo Mate were recognized by the Plan.

On or around December 21, 2001, Plaintiff was sent a document certifying Plaintiff's past service credit entitlement under the Plan.[5]  In total, Plaintiff received 9.75 years of past service credit for the years 1986 to 1998, but was denied 6.25 years of past service credit for the years 1979 to 1985.[6]  In 2003, Plaintiff appealed the Plan's partial denial of benefits. Plaintiff's appeal was subsequently denied.[7] Plaintiff, thereafter, filed this declaratory action

---

[4]According to Plaintiff, while he performed work commensurate with these supervisory positions, he accepted a lower job title in order to remain in the SIU.

[5]While the Certification is dated December 21, 2001, it appears to have been signed by the Director of Benefits on January 3, 2002.

[6]The 6.25 years included three years of Plaintiff having insufficient days of employment as a Barge Captain or Cargo Mate during this period to earn any pension credit, three years of a break in service, and a quarter of a year in 1982 during the period Plaintiff was employed in positions that were not covered.

[7] In reviewing Plaintiff's appeal, the Plan's Trustee's noted the following:

> It appears that during 1982, the position fo Barge Captain at which Mr. McCormick was working was moved into a management position, covered by the Maritrans company pension plan. Mr. McCormick wished to remain in the SIU collective bargaining unit and continue his coverage under the plan (1982-1989). At Mr. McCormick's request, Maritrans agreed to continue contributions on his behalf to SIU and carry him as a Tankerman, an SIU position, on their records. Mr. McCormick states that he continued to have the same duties

(continued...)

asking this Court for an Order directing Defendant to credit Plaintiff for all past years of service under Defendant's Pension Plan.

## II. DISCUSSION

**A.**   *Summary Judgment Standard.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

In order to defeat a motion for summary judgment, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse

---

⁷(...continued)
during this time period as he had in the past.

. . .

[We] have reviewed Mr. McCormick's record and are of the opinion that his time as a tankerman covered under the SIU Pension Plan is not creditable under the AMO Pension Plan, which only provides for recognition of credit in a job classification covered under the Plan.

(Dkt. 4, Ex. I).

party's response, by affidavits . . . must set forth *specific facts* showing that there is a genuine issue for trial." F.R.C.P. 56(e) (2005) (emphasis added). In reviewing Plaintiff's response in opposition to Defendant's Motion for Summary Judgment, his generalized denials, i.e. "this [fact] is disputed", are clearly insufficient to defeat Defendant's Motion. Failure to make a showing sufficient to establish the existence of any essential element of a claim is fatal and mandates the entry of summary judgment. See Millman v. Kemper Nat. Services Plantation, Florida, 147 F.Supp.2d 1329,1332 (S.D. Fla. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). Notwithstanding Plaintiff's failure to raise any facts in opposition to Defendant's Motion, this Court will address the merits of the Motion.

**B.**     *ERISA Standard of Review*.

There are three standards of review appropriate in ERISA decisions. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 110 S. Court. 948, 103 L.Ed. 2d 80 (1989) (comparing ERISA law to trust law and adopting the standards of review from trust law to fit ERISA cases). First, where an ERISA plan does not grant the fiduciary or plan administrator discretion to determine eligibility for benefits or to construe the terms of the plan, the Court will apply a *de novo* standard of review. See Williams v. BellSouth Telecommunications, Inc., 373 F.3d 1132, 1135 (11th Cir. 2004); see also Marecek v. BellSouth Telecommunications, Inc., 49 F.3d 702, 705 (11th Cir. 1995). Second, when the plan does grant the fiduciary or plan administrator such discretion, the "arbitrary and capricious" standard applies.. See Williams, 373 F.3d at 1135. This standard affords the plan administrator the most deference, allowing for a reversal of the decision only if no

"reasonable" grounds exist to support the plan administrator's decision. See id. at 1137-1138.

Finally, if the plan grants the fiduciary or administrator discretion, but the Court finds a conflict of interest between the fiduciary or administrator and the company, a "heightened arbitrary and capricious" standard applies, and the Court will consider this conflict in its analysis. See Brown v. Blue Cross & Blue Shield of Alabama, Inc., 898 F.2d 1556, 1566 (11th Cir. 1990) ("[W]e hold that when a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretations of plan provisions committed to its discretion was not tainted by self-interest"). However, only if the Court disagrees with the ultimate decision of the administrator, i.e., the administrator's decision to deny benefits was wrong, does the Court examine whether a conflict exists. See Yochum v. Barnett Banks, Inc. Severance Pay Plan, 243 F.3d 541,544 (11th Cir. 2000) (citing Maracek, 49 F.3d at 705).

In reviewing Article VII, Section 7.4 of AMO Pension Plan's Rules and Regulations[8], this Court finds that the arbitrary and capricious standard of review applies. Under the arbitrary and capricious standard, a court's role is limited to "determining whether the contested interpretation was made rationally and in good faith." Rosser-Monahan v. Avon Products, Inc., 227 F.R.D. 695,698 (M.D. Fla. 2004). A reversal of a Trustee's decision is

---

[8]Section 7.4 states in part, "[t]rustees shall be the sole judges of the standard of proof required on any case, and shall have the sole discretion to construe and interpret the provisions of these Rules and Regulations and to *determine eligibility for participation and benefit*." (Dkt. 35, Ex.2) (emphasis added).

only appropriate if no reasonable grounds exist to support the Trustee's decision. Haigler v. CIGNA Corp., 2006 WL 196936 at 4 (M.D. Fla. 2006). "However, the examination of the reasonableness of the [Trustee]'s decision only occurs if the Court determines *de novo* that the Plan Administrator's decision was 'wrong'." Id. If the Court agrees with the Trustee's decision, the analysis stops there and the decision should be affirmed. Id. In the instant case, this Court finds that the Trustees' decision was correct.

Pursuant Section 4.5 to the Rule and Regulations of the AMO Pension Plan,

> (a) If an employer first contributed to the Pension Trust Fund with respect to a unit of Employees after January 1, 1956, the Employees shall not be credited with any prior employment in that unit until one (1) year after the date for which the Employer first contributed for that unit; thereafter, all such employment in that unit shall be credited as Covered Employment, including the period preceding the first contributions, provided the employee was in the employ of the Employer on the date the employer first contributed to the Pension Trust, received pension credit for 200 days of Covered Employment during the one year following that date, and remains in the employ of the Employer at the conclusion of the one year.

(Dkt. 35, Ex.2). Under the terms of the Plan, "the unit" consisted of those positions covered by the collective bargaining agreement between AMO and Maritran. In Plaintiff's case, these positions were Barge Captain and Cargo Mate, two positions that were included in the bargaining unit in 1998, and for which he could, under the Plan, receive past service credit. All other positions Plaintiff held, irrespective of the work performed, was work outside of the bargaining unit, and not eligible for past service credit.

This Court determines that the Trustees' decision was correct. It is therefore ORDERED AND ADJUDGED that:

1. Defendant AMO Plans' Motion for Summary Judgment With Incorporated Memorandum of Law (Dkt. 28) is hereby **GRANTED**.

2. The Clerk is directed to enter judgment for Defendant.

3. All pending motions are denied as moot.

4. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Tampa, Florida on June 12, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\05-cv-199 - SJ Motion - ERISA.frm